[Cite as *Sullinger v. Sullinger*, 2020-Ohio-3549.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Douglas A. Sullinger

    Appellant

v.

Carol F. Sullinger and
Vendita Technology Group, Inc.

    Appellee

Court of Appeals No. L-19-1261

Trial Court No. DR2015-0204

**DECISION AND JUDGMENT**

Decided: June 30, 2020

* * * * *

Joseph B. Clarke, for appellant.

Matthew T. Kemp, for appellee.

* * * * *

**ZMUDA, P.J.**

{¶ 1} This is an appeal from the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division, which, upon remand, clarified specific matters regarding the award of spousal support. Finding no abuse of discretion by the trial court regarding a reasonable and appropriate award of spousal support, we affirm as to the remaining issue on appeal.

# I. Background

{¶ 2} We address only the issue of spousal support in this appeal. We previously addressed other aspects of the divorce decree and judgment in *Sullinger v. Sullinger,* 6th Dist. Lucas No. L-18-1079, 2019-Ohio-1489, ¶ 127, *appeal not allowed*, 156 Ohio St.3d 1486, 2019-Ohio-3331, 129 N.E.3d 453, ¶ 127 (*Sullinger I*"). We outlined the facts and history of proceedings of the parties' dispute in the prior appeal, and for purposes of the present matter, we limit our discussion of facts to those related to an appropriate award of spousal support.

{¶ 3} Plaintiff-appellant Douglas Sullinger and defendant-appellee Carol Sullinger married on October 8, 1994, and have two children together, both now emancipated. During the marriage, Douglas and Carol formed a successful business, a technology reseller that sells and renews licenses on Oracle products. The business was comprised primarily of Vendita Technological Group, LLC ("VTG, LLC") and Vendita Technological Group, Inc. ("VTG, Inc."). During the marriage, Carol owned 51 percent of VTG, LLC and held the position of CEO, with Douglas owning 49 percent and holding the position of Executive Vice President.

{¶ 4} Douglas controlled the company's day-to-day operations. Carol did not participate to the same extent in the business, but her majority ownership allowed VTG, LLC to participate in supplier diversity initiatives with the Women's Business Enterprise National Council as a minority-owned business. VTG, LLC was the profit-generating arm of the business, and made annual distributions to Douglas and Carol.

2.

**{¶ 5}** Douglas owned and controlled VTG, Inc., as President and sole shareholder of that entity. He used VTG, Inc. to pay the Vendita business expenses, and VTG, LLC reimbursed VTG, Inc. for these expenses by paying it an annual management fee. Douglas earned a salary from VTG, Inc., in addition to the annual distributions from VTG, LLC. In dividing the marital property, the trial court adopted Douglas's expert valuation for the business of $1,248,000, as "more representative of the fair market value" of the company, and rejected Carol's much higher expert valuation. As part of the division of marital assets, Douglas received the entire Vendita business, free and clear of Carol's interest.

**{¶ 6}** The trial court determined that Douglas engaged in financial misconduct during the pendency of the divorce, while rejecting Douglas's claim that Carol also engaged in wrongdoing. The trial court found that Douglas violated court orders by disposing of marital assets and incurring new debt, directing a change in revenue recognition for the business in order to deprive or defeat Carol's marital interest in the business assets, and taking "excessive distributions totaling approximately $798,000 * * * labelled as 'accounts receivable,'" obligating Douglas to repay $434,717 to the business. The trial court also found that Douglas passed personal expenses through the business, later reclassified as additional compensation or as a distribution. Because of these findings and other instances of misconduct, the trial court exercised its equitable authority and ordered an unequal division of marital property, awarding Carol an additional $500,000 as part of the division of property.

3.

{¶ 7} In considering spousal support, the trial court addressed the statutory factors of R.C. 3105.18. The trial court specifically noted the standard of living enjoyed by the parties during the marriage, as well as Carol's contribution to the success of the business and Douglas's conduct during the proceedings to divest Carol of her proper distributions. The trial court also noted the age and health of the parties, the disparate income after the award of the Vendita business to Douglas, and Carol's sacrifices in her own career in order to take care of the child-rearing duties and assist Douglas in realizing his own career success.

{¶ 8} As to the parties' income, Douglas testified that his 2017 salary was $200,000. Douglas also argued that the K-1 distributions should not count as income for purposes of determining an appropriate award of spousal support. The trial court disagreed, and noted Douglas received income in three categories: salary/wage earnings, K-1 distributions, and interest payments. The trial court further noted that Douglas controlled his salary and distributions, and manipulated this income to minimize wage earnings and maximize distributions, which are subject to less taxation. Additionally, the trial court noted that Douglas ran his "personal expenses through the business," deflating his income from distributions. The trial court determined Douglas's average annual distributions totaled $763,333, and his average annual interest income totaled $6,806.

{¶ 9} In contrast, post-divorce, Carol ceased receiving any distributions from the business, and her sole earnings consisted of a salary and benefits from the University of Toledo, where she teaches full-time in a non-tenure track position. Carol's salary

4.

fluctuated, depending on the number of semesters taught, but she anticipated earnings of $58,700 in 2017.

{¶ 10} The trial court determined an award of $14,000 per month for seven years to be a reasonable and appropriate award of spousal support, and retained jurisdiction over the amount of the award.[1] Douglas appealed the award of spousal support, among other assignments of error, arguing the trial court abused its discretion in considering income from the business as "double-dipping." Douglas also argued the trial court failed to consider all income, including the assets awarded to Carol, in determining the amount of support, and included expenses for the couple's emancipated children in the calculation. Finally, Douglas challenged the requirement for life insurance, arguing the judgment did not explicitly terminate spousal support upon his death.

{¶ 11} We disposed of some of these issues in the initial appeal, rejecting Douglas's assertion that the trial court "double-dipped" by considering K-1 distributions in determining Douglas's future earnings. We also determined that the trial court did not include expenses for the couple's emancipated children in its consideration of spousal support. The trial court's calculation of Douglas's salary income, however, was unclear, with the trial court apparently adding Douglas's 2017 salary to his three-year average

---

[1] Douglas filed a motion for modification of spousal support on May 1, 2019, followed by a supplemental motion on August 30, 2019. The trial court scheduled hearing in November, after the October 11, 2019 judgment now on appeal. The trial court granted Carol's motion to continue hearing on Douglas's request for modification of spousal support, and the issue appears to remain pending in the trial court.

5.

salary "instead of merely using this figure to calculate his average salary based on a four-year average."

{¶ 12} On April 19, 2019, we affirmed in part, reversed in part, and remanded the matter with instruction to the trial court to "either explain why it added Douglas's 2017 salary or correct this aspect of its calculation and any effect it may have had on its spousal-support award." *Sullinger I* at ¶ 101. Additionally, the trial court had ordered Douglas to obtain life insurance without clearly indicating its intent for the spousal support order to survive his death. We therefore also remanded for clarification on this issue. *Sullinger I* at ¶ 113.

{¶ 13} On May 20, 2019, Douglas filed a motion for findings by the court, asking the trial court to prepare findings of fact in issuing its decision upon remand, asserting that he "has been unable to determine how [the trial court] arrived at its income figure."[2] On October 11, 2019, the trial court issued its judgment, explaining the addition of Douglas's 2017 salary as follows:

> In determining Carol's request for an award of spousal support, the Court had to determine numerous factors pursuant to R.C. 3105.18 including the respective incomes of the parties.

---

[2] Douglas also filed a motion seeking a stay of execution of the judgment in the trial court and this court. The parties resolved the request for a stay through a consent entry in the trial court.

6.

Douglas's income came from three separate sources – K-1 pass-through income, interest income and wages. No information was available as to K-1 and interest income for the year 2017 as those amounts are only determined at year-end. Therefore, the Court averaged those incomes for the years 2014 through 2016.

Douglas's wage income was treated differently, it was not averaged. The Court had specific testimony from Douglas as to his 2017 wages. He is the CEO and CFO of Vendita, Inc., the entity paying his wages. He testified his 2017 wages would be $200,000. Therefore, there was no need to average his wages.

Additionally, in determining the parties' income, the Court considered Carol's testimony that her wages from the University of Toledo for 2017 was going to be $58,700. As with Douglas's wages, the Court did not average her wages to determine current income based upon her testimony.

The trial court also clarified its intent regarding its order to Douglas to maintain a life insurance policy. The trial court stated:

It was the intention of the Court that Douglas's spousal support obligation continue in the event of his death. The Court reached that decision after considering Douglas's age and health, the duration of the marriage, the standard of living enjoyed by the parties during the time they

7.

lived together, Carol's loss of income by awarding the Vendita Entities to Douglas, and the other factors set forth in the Court's Judgment Entry of March 23, 2018.  * * *.

With the trial court's judgment, it addressed all matters on remand.

## II.  Assignments of Error

{¶ 14} Douglas now appeals only the determination regarding spousal support, asserting the following assignments of error:

No. 1:  The trial court abused its discretion when it incorrectly calculated [Douglas's] average income based on his tax returns.

a.  Entire K-1 distributions cannot be considered income for the purpose of determining spousal support.

No. 2:  The trial court committed prejudicial error when it failed to calculate [Douglas's] W-2 income based on a four-year average.

{¶ 15} Carol responded to Douglas's first assignment of error, arguing it represented an attempt to reargue a settled issue.  On May 28, 2020, Carol filed a motion seeking sanctions under App.R. 23, which Douglas opposed on June 17, 2020.  We shall address the motion for sanctions with the issues on appeal.

## III.  Spousal Support

{¶ 16} Douglas argues the trial court abused its discretion in awarding $14,000 in monthly spousal support to Carol.  We addressed some of the issues raised by Douglas in the prior appeal, remanding the matter back to the trial court for clarification of his

8.

salary/wage earnings. Accordingly, we continue our review of the spousal support award, addressing the new assignments of error raised after the trial court's judgment on remand.

## A. Determination of average K-1 Income

{¶ 17} In his first assignment of error, Douglas argues the trial court incorrectly calculated his average income, and erred in considering the entire K-1 distributions as part of its calculation. Carol challenges the claimed error as issues either never raised in the initial appeal, or beyond the scope of issue on remand.

{¶ 18} In his first appeal, Douglas challenged the award of $14,000 in spousal support, based on various arguments, including the determination of his annual salary income—an issue remanded for clarification as to the inclusion of his 2017 salary. In the present appeal, Douglas asserts assignments of error related to the determination of his income, specifically challenging the trial court's treatment of his K-1 earnings in determining the award of spousal support. Carol argues the law of the case precludes our review of issues beyond the issue of Douglas's salary determination.

{¶ 19} The law of the case doctrine provides that a "decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Singleton v. Singleton*, 95 Ohio App.3d 467, 470, 642 N.E.2d 708 (9th Dist.1994), quoting *Nolan v. Nolan*, 11 Ohio St.3d 1, 3, 462 N.E.2d 410 (1984) (citation omitted); *see also Lauber v. Grime*, 6th Dist. Fulton No. F-01-017, 2002-Ohio-2684, ¶ 50 (citations omitted). After remand for

9.

consideration of a specific issue, the trial court has no authority to enlarge its review beyond the mandate given. *Singleton* at 471, citing *Nolan* at 3.

{¶ 20} The sole issue on remand, pertinent to this appeal, was the trial court's clarification of Douglas's wage income in considering an appropriate award of spousal support. Previously, the trial court considered the three types of income for Douglas: salary/wages, distributions, and interest. To clarify the trial court's determination, we remanded the matter to the trial court for clarification of its salary/wage consideration and any effect that clarification might have on the award of spousal support.

{¶ 21} At issue in this appeal is the income attributed to Douglas as part of the consideration of R.C. 3108.15(C)(1) factors. In the initial appeal, Douglas argued that the trial court abused its discretion based on the theory that K-1 distributions are not appropriately included as earnings, and based on the theory that including K-1 distributions as earnings results in "double dipping." We rejected these arguments, and found the trial court properly considered Douglas's K-1 earnings, as additional income beyond his salary, and found no "double dipping" based on this inclusion.

{¶ 22} In the prior appeal, Douglas also raised specific issues regarding the trial court's determination of his total compensation. First, he argued that the trial court should have used the $400,000 in compensation determined by the valuation experts as his "reasonable market-rate compensation." We noted the lack of evidence that Douglas ever received annual compensation in the amount calculated by the experts. We found

the trial court's determination of Douglas's future income based on an actual compensation was appropriate. *Sullinger I* at ¶ 100.

{¶ 23} As to K-1 earnings, Douglas failed to assert a calculation error in his prior appeal, and otherwise failed to support a challenge to the trial court's K-1 income determination of $763,333. At most, in pursuing other legal theories in challenging the award of spousal support, Douglas appeared to concede that—if the trial court's consideration of his K-1 earnings was proper—his average income for 2014-2016 would have been $835,201 per year, and not $970,000 per year as determined by the trial court. While Douglas could have asserted a challenge to the trial court's calculation of his K-1 earnings as error in the initial appeal, he chose to challenge the award of spousal support based on other legal theories. Furthermore, we found Douglas's assertion regarding his actual K-1 earnings calculation purely speculative, as he did not "explain how he arrives at this figure." *Sullinger I* at ¶ 101.

{¶ 24} Finally, in the prior appeal, we did note the control Douglas exerted over his salary and distributions, and that "Douglas maintains a practice of running personal expenses through the business, thereby deflating distributions and profit income[.]" We also indicated the trial court "did not purport to impute any additional income to Douglas for this perceived malfeasance." *Sullinger I* at ¶ 96. With no challenge to the trial court's average K-1 earnings determination, however, we requested no clarification from the trial court regarding its calculation of K-1 distributions averaging $763,333 in remanding the matter.

11.

{¶ 25} Upon remand, the trial court clarified the wage/salary determination, pursuant to its mandate. The trial court indicated it used Douglas's stated salary of $200,000, plus the average K-1 of $763,333, plus the average interest income of $6,086, in determining a future income of approximately $970,000. Douglas now challenges the trial court's math in calculating his average K-1 income as $763,333, despite failing to assert such a challenge in the first appeal.

{¶ 26} Douglas argues that there is "no breakdown of a calculation or even an identification of the yearly amounts for the K-1s" and his tax returns provide no support for an average K-1 income of $763,333. Douglas's new theory is that the 2014-2016 tax returns support a three-year average of $528,984.67 in K-1 income, bringing Douglas's annual earnings to just over $735,000, after adding interest and salary earnings.

{¶ 27} We did not remand for a redetermination of the spousal support award. Our mandate to the trial court was to "either explain why it added Douglas's 2017 salary or correct this aspect of its calculation and any effect it *may have had* on its spousal-support award." Upon remand, the trial court considered no new evidence, and held no new hearing on the issue, but instead, issued its judgment clarifying its wage/salary determination. The trial court indicated it used only the 2017 salary for the wage/salary component of earnings, and indicated the clarification required no adjustment to the amount awarded as spousal support.

{¶ 28} While Douglas seeks, through this appeal, to reopen his appeal by renewing his challenge to the use of K-1 earnings in determining spousal support, asserting new

12.

theories in support, the law of the case doctrine precludes renewed litigation of the issues. While the law of the case rule is "a rule of practice rather than a binding rule of substantive law," it is nevertheless necessary "to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." *Nolan,* 11 Ohio St.3d at 3, 462 N.E.2d 410.

{¶ 29} Upon due consideration of Douglas's challenge to the use of K-1 distributions as earnings, therefore, we find the issues raised were either raised or capable of being addressed in the prior appeal, and exceed the scope of the issues remanded to the trial court. Accordingly, we find Douglas's first assignment of error not well-taken.

## B. Determination of salary based on four-year average

{¶ 30} In his second assignment of error, Douglas agues the trial court erred in failing to determine his salary/wage earnings based on a four-year average. In response, Carol argues that Douglas relies on authority relative to child-support determinations, and the trial court's use of a single year of earnings was proper.

{¶ 31} The statute governing child support provides for "income averaging" in appropriate cases. *See* R.C. 3119.05(H). Even so, courts interpreting this provision acknowledge that the decision to average income is within the trial court's discretion. *Coors v. MacEachen*, 1st Dist. Hamilton No. C-100013, 2010-Ohio-4470, ¶ 15. "[N]o similar statute applies to spousal support." *Coors* at ¶ 16.

13.

{¶ 32} Here, Douglas argues the trial court should have considered his average salary, based on his reporting in annual tax returns. The trial court, however, noted Douglas's lack of credibility, and the fact he controlled his salary and distributions, minimizing wages and maximizing distributions to avoid paying higher taxes. Finally, the trial court noted that Douglas ran his "personal expenses through the business," with an effect on reported income from distributions. Accordingly, we find no abuse of discretion by the trial court in adopting the salary for 2017, rather than an average reported by Douglas in his tax filings, as Douglas's annual wages. We find his second assignment of error not well-taken.

### C. Sanctions

{¶ 33} Finally, we address Carol's request for sanctions, pursuant to App.R. 23, which provides:

> If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs.

"A frivolous appeal under App.R. 23 is essentially one which presents no reasonable question for review." *Talbott v. Fountas*, 16 Ohio App.3d 226, 475 N.E.2d 187 (10th Dist.1984), paragraph one of the syllabus.

{¶ 34} While Douglas attempted to challenge settled issues related to his distribution income, we otherwise find that there were reasonable grounds for this appeal. Therefore, we find Carol's motion for sanctions not well-taken.

14.

## IV. Conclusion

{¶ 35} Having addressed the issue remanded for clarification, we hereby affirm the judgment of the Lucas County Court of Common Pleas, Domestic Relations Division. We, furthermore, deny the motion for sanctions pursuant to App.R. 23. Appellant is assessed the costs of this appeal, pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Thomas J. Osowik, J. _____

_____
JUDGE

Christine E. Mayle, J. _____

_____
JUDGE

Gene A. Zmuda, P.J. _____
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.supremecourt.ohio.gov/ROD/docs/.